UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

LUKE OHLSON,                                          )
                                                      )
                                                      )
                            Plaintiffs,               )          **COMPLAINT**
                                                      )
          -against-                                   )          **JURY TRIAL DEMANDED**
                                                      )
THE CITY OF NEW YORK; NYPD POLICE                     )
OFFICER MICHAEL IGNATZ, Shield No. 19499;             )
NYPD SERGEANT KEVIN CHOW, Shield No.                  )
02016; NYPD POLICE OFFICER MATTHEW                    )
SCHULTE; NYPD POLICE OFFICER ROBIN                    )
SCOTT, Shield No. 19709; NYPD SERGEANT                )
PASQ [full first name may have additional letters]    )
PELLEGRINO; NYPD POLICE OFFICER                       )
CHARLES BRUNO, Shield No. 16336; JOHN                 )
DOES; and RICHARD ROES,                               )
                                                      )
                            Defendants.               )

---------------------------------------------------------X

## PRELIMINARY STATEMENT

1.       This is a civil action in which the plaintiff, LUKE OHLSON, seeks relief for the

defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section

1983; by the United States Constitution, including its First, Fourth and Fourteenth Amendments.

The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief,

an award of costs and attorneys' fees, and such other and further relief as this court deems

equitable and just.

**JURISDICTION**

2.      This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

**JURY TRIAL DEMANDED**

3.      Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

**VENUE**

4.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c).

**NOTICE OF CLAIM**

5.      Plaintiff filed a Notice of Claim with the Comptroller of the City of New York on July 11, 2019, within 90 days of the incidents complained of herein.  Plaintiff then filed an additional Notice of Claim with the Comptroller of the City of New York on January 16, 2020, within 90 days of the dismissal of the charges that had been lodged against him.

More than 30 days have elapsed since the filing of the Notices of Claim, and adjustment or payment thereof has been neglected or refused.

**PARTIES**

6.      Plaintiff was at all times relevant herein a resident of the State of New York.

7.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized

by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

8.      Defendants IGNATZ, CHOW, SCHULTE, SCOTT, PELLEGRINO, BRUNO, and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants IGNATZ, CHOW, SCHULTE, SCOTT, PELLEGRINO, BRUNO, and JOHN DOES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants IGNATZ, CHOW, SCHULTE, SCOTT, PELLEGRINO, BRUNO, and JOHN DOES are sued individually.

9.      Defendants CHOW, PELLEGRINO, and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command.  Defendants CHOW, PELLEGRINO, and RICHARD

ROES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants CHOW, PELLEGRINO, and RICHARD ROES are sued individually.

## STATEMENT OF FACTS

10.     On April 16, 2019, at approximately 6:15 p.m., Plaintiff was riding a Citibike on the South 5th Street Protected Bike Lane, between Driggs Avenue and Bedford Avenue in Brooklyn, NY.

11.     Plaintiff had a heavy and long foldable tripod extending out of the open-sided basket at the front of the Citibike.

12.     Defendant IGNATZ, without warning, jumped out between two parked vehicles and shouted at Plaintiff.

13.     Plaintiff swerved to avoid Defendant IGNATZ and came to a stop.

14.     Defendant IGNATZ, with no reasonable law enforcement justification, then grabbed Plaintiff's left arm and hand and violently twisted them and pinned them behind Plaintiff's back.

15.     Plaintiff, confused and frightened by the violence to which he was being inexplicably subjected, asked Defendant IGNATZ what Defendant IGNATZ wanted Plaintiff to do, and asked if he was getting a ticket.

16.     Plaintiff figured that he might be getting a ticket because although the bike lane he was riding in was wide, at the point where he was grabbed he had technically been riding in it in the wrong direction.

17.     It is common for bicycle riders to ride in the direction that Plaintiff was riding in the

bike path at that point, however, in order to access the Williamsburg Bridge.

18.     Defendant IGNATZ did not respond to Plaintiff's inquiries, and inexplicably and unnecessarily radioed for back-up.

19.     Within a matter of minutes, numerous JOHN DOES police officers arrived at the scene, including, on information and belief, Defendants CHOW, SCHULTE, and SCOTT.

20.     Plaintiff, surprised and disturbed at what was happening, tried to record what was happening with his phone, and managed to switch the phone from his right to his left hand while Defendant IGNATZ was handcuffing him and film what was happening for some seconds.

21.     The JOHN DOES at the scene, including Defendants IGNATZ, CHOW, SCHULTE, and SCOTT, made it clear through sarcasm and otherwise that they were disgruntled that Plaintiff was filming them.

22.     One of the JOHN DOES – whose identity is presently unknown, but who is likely one of Defendants IGNATZ, CHOW, SCHULTE, and SCOTT - present at the scene wrenched Plaintiff's phone out of Plaintiff's left hand by violently twisting Plaintiff's wrist, causing Plaintiff to drop the phone.

23.     Several of the JOHN DOES lifted Plaintiff off of the bicycle.

24.     None of the force used upon Plaintiff was in any way necessary or justified by any legitimate law enforcement purpose, as Plaintiff had been cooperative with all of the officers and had not resisted them in any way.

25.     After he was lifted off of the bicycle, Plaintiff was then rear-handcuffed with excessive and punitive tightness by the JOHN DOES.

26.     The JOHN DOES did not give Plaintiff any explanation for why Plaintiff was being arrested.

27.     Plaintiff was then taken in handcuffs to the NYPD 90th Precinct.

28.     Plaintiff was experiencing pain to his left wrist from the way Defendants had

violently twisted it, and from the way it was handcuffed behind his back.

29.     At the 90th Precinct Plaintiff was placed into a cell, at which point the handcuffs were removed.

30.     Plaintiff was held in the cell until approximately 1:00 a.m. on April 17, 2019, at which point he was transferred in NYPD custody to Brooklyn Central Booking.

31.     Plaintiff was held in Central Booking until later that morning when he appeared in front of a judge to be arraigned.

32.     In total, Plaintiff was held in NYPD custody for approximately 15 hours.

33.     While he was in NYPD custody at the Central Booking facility Plaintiff asked screening medical staff for medical treatment for his wrist, but that was not provided to him.

34.     A JOHN DOE member of the NYPD was present when Plaintiff requested medical care for his wrist.

35.     Defendant BRUNO is listed (via his tax identification number) on the Central Booking property voucher that was issued to Plaintiff.

36.     Plaintiff was wrongfully charged with three violations of the Vehicle and Traffic Law, along with Obstruction of Governmental Administration and Resisting Arrest.

37.     Obstruction of Governmental Administration and Resisting Arrest are both Class A misdemeanors punishable by up to a year in jail.

38.     The Criminal Complaint lodged against Plaintiff is signed by Defendant IGNATZ, and falsely alleges, *inter alia*, that Defendant IGNATZ asked Plaintiff multiple times to stop and that Plaintiff refused, and that Plaintiff resisted arrest by flailing his arms while Defendant IGNATZ attempted to handcuff him.

39.     The NYPD arrest report authored by Defendant IGNATZ falsely alleged that Plaintiff refused to stop flailing his arms, and refused a lawful order to stop and give identification.

40.     Defendant PELLEGRINO is the "Supervisor Approving" on the arrest report.

41.     Plaintiff was released on his own recognizance at arraignment.

42.     Plaintiff had to return to Criminal Court seven times to defend against the false charges that were lodged against him.

43.     All of the charges against Plaintiff were dismissed, by way of a motion to dismiss, in their entirety on December 3, 2019.

44.     Plaintiff upon his release was diagnosed with a sprain to his left wrist, and also suffered from a significant amount of pain and tingling, and difficulty feeling sensation, to his left pointer finger and thumb.

45.     Plaintiff continues to have difficulty straightening his thumb to the present day.

46.     Plaintiff wore a wrist brace for many months after the incident due to the injury inflicted upon him by the Defendants, and continues to wear it as needed.

47.     Defendants' purposeful interference with Plaintiff's attempt to video-record them, and their violent and perjurious retaliation for same, was in flagrant violation of not only the First Amendment, but also of long-standing internal NYPD written policies and practices (the consistent violation of which has been long-tolerated within the NYPD).

48.     In 1977 the City of New York and its then-Police Commissioner entered into a consent decree in the class action Black v. Codd, 73 Civ. 5283 (JNC), which stated, in relevant part, as follow:

> It is stipulated by and between the attorneys for the parties herein that it is the policy of the New York City Police Department and the defendants that when a person (or persons) is detained, stopped or arrested in public areas, a person or persons not involved in the conduct for which the first person is stopped or arrested may remain in the vicinity of the stop or arrest as an onlooker or onlookers, subject to the safety of the person stopped, the third persons, the general public, and officers of the Police Department, and to provisions of law e.g. P.L. 195.05.
> ….

In the following provisions, the term "officer" refers to New York City police officers, agents of the defendants:

1.  A person remaining in the vicinity of a stop or arrest (herein after an "onlooker") shall not be subject to arrest for violation of Penal Law § 195.05 unless the officer has probable cause to believe that a violation of Section 195.05 exists.

2.  None of the following constitute probable cause for arrest or detention of an onlooker unless the safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated:

> (a) Speech alone, even though crude and vulgar;
> (b) Requesting and making notes of shield numbers or names of officers;
> (c) Taking photographs;
> (d) Remaining in the vicinity of the stop or arrest.

3.  Whenever an onlooker is arrested or taken into custody, the arresting officer shall report the action to the supervisor at the station house or other place where the person is taken….

4.  Defendants shall notify all officers and other employees of the Police Department of the terms of this stipulation by appropriate department order within 60 days of the entry of this order. Such order shall embody the terms of paragraphs l through 3 of this order.  Area commanders will be informed that the basis for the said departmental order is the settlement of this litigation and that the terms of this order are part of the departmental order. Area commanders shall inform precinct commanders of the existence of this order.
….

The above provisions of this order shall and the same hereby do constitute the final judgment of this court upon the controversy between defendants, plaintiffs and the plaintiff class.

49.     In response to numerous complaints by members of the press and the public, and

various civil rights organizations, concerning the routine violations of the First Amendment and

the consent decree in <u>Black v. Codd</u>, the NYPD's Chief of Department – in, on information and

belief, the summer of 2014 – issued a "FINEST MESSAGE  General Administrative

Information" which reiterated the written policy (the consistent violation of which has been long-

tolerated within the NYPD) of the NYPD to be as follows:

> TO:  ALL COMMANDS
>
> RE: RECORDING OF POLICE ACTION BY THE PUBLIC
>
> MEMBERS OF THE SERVICE ARE REMINDED THAT MEMBERS
> OF THE PUBLIC ARE LEGALLY ALLOWED TO RECORD (BY
> VIDEO, AUDIO, OR PHOTOGRAPHY) POLICE INTERACTIONS.
> THESE INTERACTIONS INCLUDE ARREST AND OTHER
> SITUATIONS. MEMBERS OF THE SERVICE WILL NOT INTERFERE
> WITH A PERSON'S USE OF RECORDING DEVICES TO RECORD
> POLICE INTERACTIONS. INTENTIONAL INTERFERENCE SUCH
> AS BLOCKING OR OBSTRUCTING CAMERAS OR ORDERING THE
> PERSON TO CEASE CONSTITUTES CENSORSHIP AND ALSO
> VIOLATES THE FIRST AMENDMENT.
>
> IT SHOULD BE NOTED, HOWEVER, THAT PERSONS MAY NOT
> INTERFERE WITH POLICE OPERATIONS. MEMBERS, IF
> APPROPRIATE, SHOULD ADVISE THE PUBLIC NOT TO GET TOO
> CLOSE AND MAY TAKE ACTION ONLY IF THE PERSON
> INTERFERES WITH THE OPERATION OR THE SAFETY OF THE
> MEMBERS OF THE SERVICE OR THE PUBLIC.  HOWEVER, MERE
> RECORDING OF AN INCIDENT DOES NOT CONSTITUTE
> INTERFERENCE.  COMMANDING OFFICERS WILL ENSURE THAT
> THE CONTENTS OF THIS MESSAGE ARE DISSEMINATED TO ALL
> MEMBERS OF THE SERVICE.

50.     Defendants intentionally interfered with, and retaliated against Plaintiff for,

Plaintiff's attempts to video-record them.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

51.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

52.     By their conduct and actions in unlawfully assaulting and battering plaintiff,

falsely arresting plaintiff, unlawfully seizing plaintiff, violating and retaliating for the exercise of

First Amendment rights of plaintiff, abusing process against plaintiff, wrongfully prosecuting

plaintiff, fabricating evidence against plaintiff, conspiring against plaintiff, failing to intercede on

behalf of the plaintiff, and in failing to protect the plaintiff from the unjustified and

unconstitutional treatment he received at the hands of other defendants, defendants IGNATZ,

CHOW, SCHULTE, SCOTT, PELLEGRINO, BRUNO, and JOHN DOES, acting under color of

law and without lawful justification, intentionally, maliciously, and with a deliberate indifference

to or a reckless disregard for the natural and probable consequences of their acts, caused injury

and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983

and the United States Constitution, including its First, Fourth and Fourteenth amendments.

53.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced

injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged

and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

54.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

55.    By their conduct in failing to remedy the wrongs committed by their subordinates

and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants

CHOW, PELLEGRINO, and RICHARD ROES caused damage and injury in violation of

plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including

its First, Fourth and Fourteenth amendments.

56.    As a result of the foregoing, plaintiff was deprived of his liberty, experienced

injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged

and injured.

### THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

57.    The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

58.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants had de facto policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein.

59.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had de facto

policies, practices, customs, and usages of failing to properly train, screen, supervise, or

discipline employees and police officers, and of failing to inform the individual defendants'

supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

60.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the use of excessive force by members of the NYPD.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

61.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

62.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association in a manner that affronts police officers or is interpreted by police officers as challenging their authority or documenting or reporting their misconduct, including filming them.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

63.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM

## RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

64.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

65.     The conduct of the individual defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers / supervisors, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

66.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

## ASSAULT AND BATTERY

67.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

68.     By the actions described above, defendants did inflict assault and battery upon the

13

plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

69.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

### FALSE ARREST AND FALSE IMPRISONMENT

70.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

71.     By the actions described above, defendants caused plaintiff to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

72.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

### TRESPASS

73.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

74.     The defendants willfully, wrongfully and unlawfully trespassed upon the property and person of plaintiff.

75.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### NEGLIGENCE

77.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

78.     The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

79.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

80.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

81.     Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and

proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

82.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

## ABUSE OF PROCESS

83.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

84.     By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

85.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM

## CONSTITUTIONAL TORT

86.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

87.     Defendants, acting under color of law, violated plaintiff's rights pursuant to

Article I, §§ 6, 8 and 12 of the New York State Constitution.

88.     A damages remedy here is necessary to effectuate the purposes of §§ 6, 8 and 12

of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights

under those sections.

89.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced

injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged

and injured.


## TWELFTH CLAIM

## MALICIOUS PROSECUTION

90.     The plaintiffs incorporate by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

91.     By the actions described above, defendants maliciously prosecuted plaintiff

without any right or authority to do so.  The acts and conduct of the defendants were the direct

and proximate cause of injury and damage to plaintiff and violated his statutory and common law

rights as guaranteed by the laws and Constitution of the State of New York.

92.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced

injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

93.     The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

94.     By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

95.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

## PRIMA FACIE TORT

96.     The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97.     By the actions described above, defendants intentionally harmed Plaintiff, without any excuse or justification, by an act or series of acts which would otherwise be lawful.

98.     As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged

and injured.

WHEREFORE, the Plaintiff demands the following relief jointly and severally against all of the defendants:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  The convening and empaneling of a jury to consider the merits of the claims herein;

    d.  Costs and interest and attorney's fees;

    e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
             November 2, 2020

                                    __/S/__ Jeffrey A. Rothman_____
                                    JEFFREY A. ROTHMAN, Esq.
                                    Law Office of Jeffrey A. Rothman
                                    305 Broadway, Suite 100
                                    New York, New York 10007
                                    (212) 227-2980

                                    Attorney for Plaintiff